UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KENNETH PLEASANT,

Plaintiff,

v.                        408CV192

NEESMITH TIMBER COMPANY, INC.,

Defendant.

## ORDER

### I. INTRODUCTION

Plaintiff Kenneth Pleasant was severely injured in late February 2007 after being involved in an accident with an eighteen wheeler truck while attempting to cross a street in Jesup, Georgia. Plaintiff seeks damages from Defendant Neesmith Timber Company ("Neesmith") for injuries allegedly arising from Defendant's "negligence and conscious indifference to the circumstances in leaving the scene of the accident."[1] Doc. # 1 at 3 (Complaint). Defendant denies any involvement in the accident and has moved the Court for summary judgment. Doc. # 67. Also before the Court is Defendant's motion *in limine* to exclude the testimony of James A. Acock, Plaintiff's expert on trucking safety. Doc. # 72.

### II. BACKGROUND

On 2/24/07, Plaintiff Kenneth Pleasant, a Texas resident, arrived in Jesup, Georgia with a crew from Blast Industrial Services to work at a local plant. Doc. # 69-1 at 6, 17-18 (deposition of Kenneth Pleasant). On the morning of 2/26/07, the crew's first scheduled workday, Plaintiff and several of his co-workers walked across the street from the hotel to buy breakfast at McDonald's. *Id.* at 22, 65-66. Around 6:45 a.m., Plaintiff realized that he had left his badge in his hotel room and attempted to return to his room to retrieve it. *Id.* at 21-22; 65-66. This is when the accident occurred. Plaintiff recalls "crossing the street, ... waiting on the red light to change[,] and as the red light changed to green, [he] proceed[ed] to cross the street" and was hit by a truck.[2] *Id.* at 22.

William Dancer, Plaintiff's supervisor at Blast Industrial Services, witnessed the accident and testified that the traffic light was yellow when the truck was "fixing to come up under the light," but, "[b]y the time [the truck] got through, it [had turned] red." Doc. # 69-4 at 6 (deposition of William Dancer). Mr. Dancer described the truck that hit Plaintiff as a white logging truck with black writing on the door. *Id.* at 4-6. Mr. Dancer, however, was unable make out the writing on the door. *Id.* at 9.

William Beasley, a truck driver who also witnessed the accident, observed Plaintiff rolling on the highway in front of McDonald's after "a logging truck with a white tractor and empty trailer passed by [Plaintiff]." Doc. #

---

[1] Plaintiff's Complaint originally sought damages from Neesmith and Beach Timber Company. The latter defendant was dismissed from this case at Plaintiff's request. Doc. ## 32 ("Motion to Drop Party"); 33 (Order dismissing claims against Beach Timber Company without prejudice).

[2] The version of the accident described during Plaintiff's deposition differs significantly from the one he previously gave during a hearing before the Texas Department of Insurance, Division of Workers' Compensation. Doc. # 69-2. In that hearing, Plaintiff described a black semi-truck that revved its engine and backed into him. *Id.* at 7-8, 13-14. Plaintiff then "immediately ran to the [driver's side] door to open that door and get [the driver] out of there, because [Plaintiff] felt that [the driver] was ... trying to put it into gear to pull off and leave." *Id.* at 14. Defendant suggests that Plaintiff's new version of the accident ought to be excluded under the sham affidavit rule. *See* doc. # 69 at 10-11. The Court, however, will refrain from applying that rule in light of testimony from multiple witnesses that the truck involved in the accident was white.

69-14 at 2 (affidavit of William Beasley). Mr. Beasley did "not see any signs or other markings showing who owned or operated the white logging truck."[3] *Id.*

Surveillance video from an adjacent convenience store further evinces that a white logging truck was involved in the accident with Plaintiff.[4] Corporal Steve Ryals, who reported to the accident scene, viewed the surveillance video and observed Plaintiff "step[] directly into the side of the attached trailer" towed by a "white tractor" after "stopping to permit traffic to pass." Doc. # 69-11 at 4 (affidavit of Steve Ryals). Trooper Franklin Keith Mack, who investigated the accident and prepared the Georgia Uniform Accident Report, also viewed the surveillance video and likewise observed Pleasant "walking across the road and into the truck." Doc. # 69-8 at 7 (deposition of Franklin Keith Mack).

Lastly, GPS data confirms that Defendant's truck (driven by Stacy Mosley) was near the area of the accident at 6:43 a.m. and again at 6:45 a.m. on 2/26/07. Doc. # 77-5. Defendant concedes that its truck was nearby when the accident occurred. *See* doc. # 69 at 11 ("Defendant never denied its truck was in the area, but it was clearly not involved....").

## III. MOTION *IN LIMINE*

Defendant has moved *in limine* to exclude the testimony of James A. Acock, Plaintiff's expert on trucking safety. Doc. # 72. Defendant suggests that "the record is clear that [Mr.] Acock lacks the level of knowledge, skill, experience, training, or education required under applicable law to be recognized as an expert." *Id.* at 2. Defendant alternatively argues that "[Mr.] Acock's testimony is inadmissible because it lacks the scientific reliability and validity required by Rule 702 of the Federal Rules of Evidence." *Id.* Defendant thus challenges the opinion of Plaintiff's proffered expert as lacking a reliable foundation for admission under the standards of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Federal Rule of Evidence 702 lays the foundation for the Court's *Daubert* analysis: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* requires the Court to act as a gatekeeper to ensure that speculative and unreliable opinions do not reach the jury. 509 U.S. at 589 n.7, 597. As a gatekeeper, the Court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

---

[3] Mr. Beasley later inspected the Neesmith logging truck at the City of Jesup Police Department. Doc. # 69-14 at 3. He avers that the white logging truck he saw in the vicinity of Pleasant was "covered in mud" and that the Neesmith truck "was not covered in mud and appeared different." *Id.* Mr. Beasley informed the investigating officer that the Neesmith truck "was not the truck [he] saw in the vicinity of [Pleasant]." *Id.*

[4] The surveillance video was lost/destroyed during the course of discovery, and all that remains are still photographs from the original footage. Doc. # 71 at 2-3 (Defendant's motion for sanctions or alternative motion *in limine*). Plaintiff, however, has withdrawn the still photographs from the record and has agreed that witnesses "may offer testimony as to the contents of the videotape except as to any information as to the date and time of the accident." Doc. # 84 at 1 (stipulation).

2

properly can be applied to the facts in issue." *Id.* at 593-94.

Mr. Acock's extensive knowledge, skill, experience, and training qualify him as an expert on trucking safety. See doc. # 72-1 at 9-10 (*curriculum vitae* of James Acock). The Court, however, doubts that his testimony will assist the trier of fact in understanding the evidence in this case. Specifically, his opinions either do not require any sort of specialized knowledge, or they unnecessarily state legal or factual conclusions.

In his expert report, Mr. Acock opines that "[a] pedestrian approaching, as depicted in the police report, would be in view of the truck driver and should have been a concern. Had the truck driver utilized the defensive driving concepts incorporated into the Georgia [Commercial Driver License] Manual this accident could have been avoided."[5] Doc. # 72-1 at 4. In an addendum to that report, Mr. Acock opines "with a reasonable degree of certainty that the Neesmith Timber Company, Inc. truck ... was more likely than not to have been the truck involved in the Kenneth Pleasant incident. ... The preponderance of the evidence ... would allow [him] to opine that the Neesmith truck was at the accident location within the immediate time frame of [Plaintiff's] accident with a logging truck."

Mr. Acock's opinion that the truck driver was negligent in approaching the pedestrian is a conclusion of law to be determined by the Court. His opinion that Defendant's truck was more likely than not the one involved in the accident with Plaintiff is a conclusion of fact that is best left to the jury. This is because the jury is capable of understanding the evidence pertaining to the location of Defendant's truck even without the assistance of Mr. Acock testimony. Defendant's motion *in limine* to exclude the expert testimony of James A. Acock is accordingly granted. Doc. # 72. The Court will not consider Mr. Acock's testimony going forward in this litigation.

### IV. SUMMARY JUDGMENT

Defendant's core argument is that summary judgment is appropriate because there is no evidence that its truck was the one involved in the accident with Plaintiff. Doc. # 69 at 1. Defendant alternatively contends that (1) there is no evidence that Defendant breached any duties owed to Plaintiff or was otherwise negligent in the operation of its truck, and (2) Plaintiff's own negligence bars his recovery as a matter of law. *Id.* Lastly, Defendant has moved for summary judgment on Plaintiff's claims for punitive damages and attorney's fees. *Id.* The Court addresses each of Defendant's arguments in turn.

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S.

---

[5] The defensive driving concepts incorporated into the state's commercial driver license manual are known as the "5 keys of the Smith System." Doc. # 72-1 at 3. This system advises professional drivers to (1) aim high in steering, (2) get the big picture, (3) keep your eyes moving, (4) leave yourself an out, and (5) make sure they see you. *Id.*

3

317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence upon which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### A. Defendant's Involvement in the Accident

Defendant contends that "Plaintiff has no firsthand knowledge of, and does not know who, owned or operated the truck involved in the accident." Doc. # 69 at 11. Defendant buttresses its argument with a line of Georgia cases which generally stand for the proposition that a vehicle "marked with a distinctive insignia [is] insufficient to authorize inferences of ownership of the [vehicle]; or that it was being operated by an agent or employee ... in the course of employment." *McCoy v. S. Bell Tel. & Tel. Co.*, 172 Ga. App. 26, 27 (1984); *see also Biddy v. City of Cartersville*, 282 Ga. App. 466, 466-67 (2006) ("Georgia law is abundantly clear that the mere presence of lettering or a logo on the side of a vehicle, without more, is insufficient to establish liability."); *Sellers v. Air Therm Co., Inc.*, 231 Ga. App. 305, 307 (1998) (testimony regarding "Air Therm" writing on side of van was "not specific evidence giving rise to a triable issue as to ownership and agency"); *Burns v. United Parcel Serv., Inc.*, 135 Ga. App. 890, 891 (1975) (testimony that a tractor-trailer truck with the letters "UPS" on the door of the tractor insufficient to prove a prima facie case of liability).

Defendant is correct in that, under Georgia law, the presence of distinctive insignia on a vehicle is in itself not enough to establish ownership of the vehicle or that the vehicle was being used in the course of employment. The problem here is that neither the ownership of the Neesmith truck nor course of employment are at issue. That is, Defendant does not dispute that the truck driven by Mr. Mosley on 2/26/09 was indeed owned by Defendant, nor does Defendant dispute that the truck was being used in the course of Mr. Mosley's employment. Rather, the question is whether that particular Neesmith truck was the one involved in the accident with Plaintiff. This question distinguishes this case from *McCoy*, *Biddy*, *Sellers*, and *Burns*, where the plaintiffs hoped to pin liability on the defendants because the defendants' logo or insignia was present on a vehicle that was never subsequently identified.

Where a plaintiff can point to a specific vehicle that may or may not have been involved in the accident, the court must determine whether the plaintiff has presented sufficient evidence upon which reasonable jurors might infer that the defendant's vehicle was indeed involved. *See Ross v. A Betterway Rent-a-Car, Inc.*, 213 Ga. App. 288, 288-89 (1994). In *Ross*, the defendant argued that there was no evidence placing him at the scene of the accident. *Id.* at 288. Plaintiff's driver, however, testified that prior to the accident, the defendant's vehicle had been in the emergency lane with a disabled vehicle which contained several persons of Hispanic descent. *Id.* The defendant conceded that "on a previous occasion while driving his tow truck, he stopped to give assistance to a vehicle containing persons of Hispanic descent, but he had no knowledge of whether that occurred on [the date of the accident]." *Id.* The court reasoned that "[t]he inference which the [trier of fact] may draw from proved facts is circumstantial evidence, which the [trier of fact] has before it for consideration along with all other evidence in the case. It is for the [trier of fact] to weigh this evidence along with all the other evidence and determine where the preponderance of the evidence lies." *Id.* at 289 (quoting *Macon*

4

*Coca-Cola Bottling Co. v. Chancey*, 216 Ga. 61, 70 (1960)) (alterations in original). Thus, "there was ample evidence from which the [trier of fact] could infer that [the] defendant was the driver of the tow truck which negligently pulled from the emergency lane and caused the accident." *Id.*

GPS data taken from Defendant's truck confirms that it was nearby around the time of Plaintiff's accident. Doc. # 77-5. Defendant has conceded this point as well. Doc. # 69 at 11. Two witnesses – Mr. Dancer and Mr. Beasley – described the vehicle involved in the accident with Plaintiff as a white truck, doc. ## 69-4 at 4-6; 69-14 at 2, and Mr. Dancer observed black writing on the truck's door, doc. # 69-4 at 4-6. It is undisputed that Defendant's truck is white with black writing on the doors. *See* doc. # 69-13 at 3-9 (photographs of the Neesmith truck). Finally, surveillance video from an adjacent convenience store viewed by Corporal Ryals and Trooper Mack confirms that a white truck was involved in the accident with Plaintiff. Doc. ## 69-11 at 4; 69-8 at 7. Viewing this evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient evidence, albeit circumstantial evidence, for a reasonable juror to infer that Defendant's truck was indeed the one involved in the accident with Plaintiff.

**B. Defendant's Driver's Negligence**

Defendant contends that even if its truck was involved in the accident, "Plaintiff has still failed to set forth any evidence that Defendant's driver was negligent in the operation of the vehicle." Doc. # 69 at 13. The Court disagrees. While it is true that witnesses in this case have testified that Plaintiff stepped into the side of the empty trailer attached to the truck, *see* doc. ## 69-11 at 4; 69-8 at 7, Plaintiff and Mr. Dancer have testified that the white logging truck ran a red traffic light prior to the accident with Plaintiff, *see* doc. # 69-4 at 6. If the white logging truck was indeed Defendant's truck, then there is a material question of fact as to whether Mr. Mosley's negligence (if any) contributed to the accident with Plaintiff.

**C. Plaintiff's Negligence**

Defendant also contends that "there is ample evidence that Plaintiff's actions were the sole cause of this accident barring his recovery." Doc. # 69 at 14-15. Defendant cites a number of Georgia laws governing the manner in which a pedestrian crosses a roadway. *Id.* at 15 (citing O.C.G.A. § 40-6-91(b) ("No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield."); § 40-6-92 ("Every pedestrian crossing a roadway … shall yield right of way to all vehicles upon the roadway…, [and] [b]etween adjacent intersections at which traffic-control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk.")). While there is certainly evidence that Plaintiff acted negligently while crossing the street to return to the hotel, that negligence does not necessarily bar his recovery as a matter of law, as Defendant suggests. *See United Parcel Serv., Inc. v. Colt Sec. Agency, Inc.*, 296 Ga. App. 815, 817-18 (2009) ("Under Georgia's contributory negligence doctrine, a plaintiff who had the last clear chance to avoid injury cannot recover, and under its comparative negligence rule, 'if the plaintiff's negligence was less than the defendant's, the plaintiff is not denied recovery although his damages shall be diminished by the jury in proportion to the degree of fault attributable to him.'") (quoting *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (1988)).

Also, any inference that Plaintiff was under the influence of alcohol or marijuana around the time of the accident, doc. # 69 at 15-16, will likewise not bar his recovery as a

matter of law. There thus remain material questions of fact as to whether Plaintiff's negligence (if any) contributed to his accident.

### D. Punitive Damages and Attorney's Fees

Lastly, Defendant argues that "[t]he record is absolutely devoid of any evidence that would be needed to establish 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences' as is required by O.C.G.A. § 51-12-5.1." *Id.* at 17. Plaintiff is unresponsive to Defendant's argument, and the Court agrees that nothing in the record warrants an award of punitive damages in this case. Summary judgment is therefore appropriate as to Plaintiff's claim for punitive damages. Summary judgment is likewise appropriate as to Plaintiff's claim for attorney's fees and costs. *Id.* at 17-18. Plaintiff is similarly unresponsive to Defendant's argument, and the Court agrees that there is no indication of bad faith or stubborn litigiousness on Defendant's part. *See* O.C.G.A. § 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); *Garrett v. Women's Health Care of Gwinnett, P.C.*, 243 Ga. App. 53, 55 (2000) ("[A] bona fide controversy precludes a recovery of attorney fees.").

### V. CONCLUSION

Defendant's motion *in limine* to exclude the expert testimony of Mr. James A. Acock is *GRANTED*. Doc. # 72. The Court will not consider his testimony going forward in this case. The Defendant's motion for summary judgment is *GRANTED* in part and *DENIED* in part. Doc. # 67. The motion is granted as to Plaintiff's claims for punitive damages and attorney's fees and costs. The remainder of the motion is denied. The parties are *ORDERED* to meet and file a joint pretrial order no later than 8/10/10.

This day of 7 July 2010

*[signature]*

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA